IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| SU-YI YOCUM, As. Y., Ad. Y., and Am. Y.,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF UTAH, UTAH ATTORNEY GENERAL'S OFFICE, ATTORNEY GENERAL SEAN REYES, WEBER COUNTY, WEBER COUNTY SHERIFF'S OFFICE, SHERIFF TERRY THOMPSON, SUMMIT COUNTY, SUMMIT COUNTY SHERIFF'S OFFICE, SHERIFF JUSTIN MARTINEZ, SYRACUSE CITY, SYRACUSE POLICE DEPARTMENT, CHIEF GARRET ATKIN, INVESTIGATOR RON BRIDGE, SPECIAL AGENT WEIR, SPECIAL AGENT PURDY, SPECIAL AGENT ZIMMERMAN, SPECIAL AGENT BAGGS, SPECIAL AGENT WHITE, SPECIAL AGENT RENFRO, SPECIAL AGENT WARE, SPECIAL AGENT CODY TRACY, SPECIAL AGENT RICHMOND, CAMERON HARTMAN, JESSICA FARNSWORTH, PATTY REED, ZACHARY SNOW, and JOHN DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING SUMMIT COUNTY AND SYRACUSE CITY DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 1:16-cv-00098<br><br>Judge Clark Waddoups |

This matter is before the court on a motion to dismiss each of plaintiffs' three causes of action against Summit County, the Summit County Sheriff's Office, Detective Ron Bridge, Sheriff Justin Martinez (collectively the Summit County Defendants), and Syracuse City, the Syracuse Police Department, Chief Garret Atkin, and Special Agent Weir (collectively, the Syracuse Defendants). (Dkt. No. 6.) The court heard oral argument on the motion on February 1,

1

2017. For the reasons stated below, the court GRANTS the motion and dismisses all claims against the Summit County Defendants and the Syracuse Defendants.

## BACKGROUND

Plaintiffs are the wife and three daughters of Jason Yocum, who was the subject of a search warrant related to child pornography charges executed on March 12, 2015 by a number of officers alleged to belong to several county and/or city agencies.

Plaintiffs alleged that around August 4, 2014, Special Agent Richmond began investigating various IP addresses allegedly using "Peer to Peer" file sharing protocols and websites to share, download, and/or allegedly distribute child pornography. (Compl. ¶ 30, Dkt. No. 2.) During the course of the investigation, Richmond obtained information about an IP address originating in Syracuse, Utah involved with sharing child pornography over a "Peer to Peer" network. (*Id.* at ¶¶ 31-32.) On March 11, 2015, Detective Bridge prepared an affidavit in support of a search warrant and obtained a search warrant for Mr. Yocum's residence. (*Id.* at ¶¶ 33-34.)

Plaintiffs allege that on March 12, 2015, numerous "[o]fficers entered forcibly pursuant to [the] search warrant. They threatened and otherwise pushed eight-year-old Am. Y., who answered the door, out of the way as they entered in combat gear with guns drawn." (*Id.* at ¶¶ 36-37.) "Officers threatened Su-Yi Yocum, As. Y., Ad. Y., and Am. Y. with firearms while multiple police officers yelled at them, pointed guns at them, [and] herded them into a single room where they were detained against their will." (*Id.* at ¶ 38.) "Officers threatened Su-Yi with the loss of her children during this unreasonable search and seizure." (*Id.* at ¶ 39.) "Investigator Bridge was recorded making the admission that he was sure that no female in the residence had

committed a crime." (*Id.* at ¶ 40.)  Plaintiffs allege that their constitutional rights were violated because of the manner in which officers executed the search warrant. They also allege supervisory and municipal liability based on failure to train or supervise and/or fostering an institutional culture that supports constitutional rights violations.[1] The Summit County and Syracuse Defendants filed this motion to dismiss for failure to state a claim and asserted a qualified immunity defense.

## ANALYSIS

### I.     Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal punctuation omitted). "[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal punctuation omitted).

Furthermore, in a § 1983 case, such as this one, where defendants include a number of government agencies and actors sued in their individual capacities, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*,

---

[1] Although the complaint contains some allegations regarding violations of Mr. Yocum's fifth amendment rights, all parties acknowledged in subsequent briefing that plaintiffs do not raise this claim on their own behalf.  The complaint also alleged violations of the Fourteenth Amendment, but at oral argument plaintiff's counsel acknowledged that plaintiff's claims for excessive force fall under the Fourth Amendment rather than the Fourteenth Amendment. Finally, the complaint alleges that the search warrant lacked probable cause, but plaintiff's counsel abandoned the probable cause claim during oral argument because the issue had previously been resolved in Mr. Yocum's state court criminal case and as his spouse and children, plaintiffs are in privity with Mr. Yocum.

to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from the collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis in original).

## II. Qualified Immunity

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted). To overcome a qualified immunity defense, plaintiffs bear the burden to demonstrate on the facts alleged: "(1) that the official violated a statutory or constitutional right; *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (recognizing that the court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of a particular case."). "Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial." *Glover v. Mabrey*, 384 F. App'x 763, 767 (10th Cir. 2010). "The plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Id.* (internal quotation marks omitted). At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Duncan v. Hickenlooper*, 631 F. App'x 664, 648 (10th Cir. 2015) (emphasis in original, internal quotation marks omitted).

### A. Summit County Sheriff's Office and Syracuse Police Department are not legal entities amenable to suit and should be dismissed

Municipality subdivisions, such as its sheriff's office or police department, are not separate legal entities with the capacity to sue or be sued. *Lindsey v. Thomson*, 275 F. App'x 744, 746 (10th Cir. 2007) (affirming dismissal of § 1983 claims against police departments and county sheriff's department, entities with no apparent legal existence). Plaintiffs' reply acknowledges this reality. Accordingly, defendants Summit County Sheriff's Office and Syracuse Police Department are dismissed with prejudice.

### B. Unreasonable search, excessive force, and unlawful seizure claims

1. *Fair Notice*

Plaintiff's complaint "fails to isolate the allegedly unconstitutional acts of each defendant, and thereby does not provide adequate notice as to the nature of the claims against each." *Robbins*, 519 F.3d at 1250. Plaintiffs' identification of the majority of the individuals allegedly involved in the execution of the search warrant is nonspecific and conclusory. For example, initially, plaintiffs do not contend that Syracuse City participated in the execution of the search warrant at all. (Compl. ¶ 35, Dkt. No. 2.) Then, later in the complaint Detective Weir of the Syracuse City Police Department is identified as one of "Said Defendants" who participated. (*Id.* at ¶¶ 51-52.) His specific participation, however, is factually detailed only by mention of his presence at the interview of Mr. Yocum after the warrant had been executed. (*Id.* at ¶ 43.) Thus, neither he nor anyone else from Syracuse City is factually alleged to have participated in the actual execution of the search warrant.

Furthermore, while plaintiffs generally mention Summit County "Sheriff's personnel" as possible participants in the execution of the search warrant, Ron Bridge is the only participant

5

specifically identified as a Summit County officer. Eleven individuals and ten John Does who allegedly participated in executing the search warrant are either identified as employees of the "Office of the Utah Attorney General as a police officer, or employed as a law enforcement officer by another agency working in association with the Office of the Utah Attorney General," (Compl. ¶¶ 16-23, 24-28; Dkt. No. 2), or as being "ICAC Task Force Officers *and/or* Summit *or* Weber County Sheriff's personnel." (Emphasis added). (Compl. ¶ 35; Dkt. No. 2.)

In addition to this overly broad and conclusory identification of the defendants alleged to be involved in the execution of the search warrant, plaintiffs fail to satisfy the *Robbins* standard requiring "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250. Without alleging with specificity which officers are allegedly responsible for which violations, the complaint broadly contends that "[o]fficers entered forcibly pursuant to search warrant," that "[t]hey threatened and otherwise pushed" the eight-year-old daughter as she answered the door, that "officers threatened" plaintiffs "with firearms while multiple police officers yelled at them, pointed guns at them, [and] herded them into a single room where they were detailed against their will" and that "officers" threatened plaintiff with the loss of her children. (Compl. ¶¶ 36-39, Dkt. No. 2.)

Even if the court interprets these facts in the light most favorable to plaintiffs, it is simply not plausible that all of the numerous defendants simultaneously threatened or pushed the child while entering the home, pointed guns and herded the mother and her three children into a single room, and then threatened the mother with the loss of her children while at the same time searching the home, which is how the complaint is pled. The only specific allegation against an individual named as a participant in executing the search warrant, Ron Bridge, is that he was

"recorded making the admission that he was sure that no female in the residence had committed a crime," (*Id.* at ¶ 40), which is not a constitutional violation. Otherwise, the complaint's use of group terms such as "officers" and "defendants," as well as long lists of names of individual defendants that do not identify which acts should be attributed to whom, make it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250.

Thus, in addition to failing to satisfy the standard of fair notice required by Rule 8, plaintiffs have not alleged facts sufficient to show that the Summit County and Syracuse City defendants were personally involved in an alleged constitutional violation, which is required for individual liability under § 1983. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997). As a result, plaintiffs' first and second causes of action against the individual defendants should be dismissed under Rule 12(b)(6).

   2. *Failure to State a Claim*

Even if plaintiffs could allege specific facts to distinguish which actor took which action against whom, plaintiffs' complaint does not allege facts giving rise to a constitutional violation, specifically as to plaintiffs' allegation that the search involved excessive force.[2] Plaintiffs allege that the search warrant was executed with excessive force because (1) there was a forcible entry against innocent occupants of the residence, including children; (2) the entry included pushing aside a child and pointing guns at innocent occupants while herding them into a single room for

---

[2] As to plaintiffs' other claims of constitutional violations, for the reasons stated in defendants' briefing, the court agrees with defendants that (1) Sheriff Martinez, Chief Atkin, and Detective Weir are entitled to absolute immunity for the execution of a facially valid court order; and (2) Detective Bridge is entitled to qualified immunity because plaintiffs have failed to state a constitutional violation based on his execution of the probable cause affidavit.

detention so the search could commence, and (3) yelling and verbal threats. (Compl. ¶¶ 36-40, Dkt. No. 2.)

> i. *Dynamic entry*

The Tenth Circuit has not found excessive force violations in "dynamic" entries involving SWAT teams, even when children are present. *Holland v. Harrington*, 268 F.3d 1179, 1189-91 (10th Cir. 2001); *Ealum v. Schirard*, 46 F. App'x 587, 595 (10th Cir. 2002). In *Holland*, the decision to employ a "dynamic entry" was upheld even though the warrant was for a misdemeanor charge involving violence and officers knew innocent adults and children would be present. *Holland*, 268 F.3d at 1191. Preservation of evidence was identified as one important governmental interest justifying the "nature and quality of the intrusion." *Id.* at 1190. In *Ealum*, a "dynamic entry" was similarly upheld when the possibility of resistance was reasonable, even though it was known children would be present. *Ealum*, 46 F. App'x at 595. The severity of the offense was identified as an important governmental interest. *Id.* at 596.

Here, although the use of a SWAT team is not alleged, numerous officers from various agencies are alleged to have executed a search warrant against Mr. Yocum for serious felony child pornography charges, where preservation of evidence was an important interest. Given the seriousness of the offense and its consequences if convicted, even though neither party has alleged that Mr. Yocum had a violent history, it was reasonable for officers to assume the possibility of resistance or destruction of evidence justifying the dynamic entry. It is also important to note that unlike *Holland* and *Ealum*, the complaint makes no factual allegation that any official involved in authorizing or executing the search warrant was aware in advance that

8

anyone other than Mr. Yocum, let alone any children, would be present at the location where the search warrant was to be executed.

> ii. *Physical contact, use of guns, and detention in single room*

Some physical coercion and the carrying or display of weapons are not categorically unreasonable when officers are effecting an arrest. *Thompson v. City of Lawrence, Kansas*, 58 F.3d 1511, 1516 (10th Cir. 1995). Similarly, officers have "categorical authority" to detain any occupant of a premises identified in a search warrant for the duration of the search, regardless of innocence. *USA v. Johnson*, 414 Fed. App'x 176, 179 (10th Cir. 2011) (internal quotation marks omitted). The Tenth Circuit has identified limits, however, on physically or verbally forcing children to the ground and holding them there at gunpoint or otherwise, and on detaining innocent adults and children at gunpoint after officers have gained control of the premises. *Ealum*, 46 F. App'x at 591; *Holland*, 268 F.3d at 1192-93. Unlike both *Holland* and *Ealum*, here there is no allegation that children were forced to the floor or held there at gunpoint; one child is alleged merely to have been "pushed" out of the way as officers first entered the home. As for pointing of guns at Mrs. Yocum and her children, the Tenth Circuit contrasted the acceptability of officers executing search warrants holding firearms "in a fashion ready for immediate use" with the facts in both *Holland* and *Ealum* where loaded firearms were continued to be directly aimed or pointed at innocent adults or children even after the premises were secured.

This distinction highlights the problem with plaintiffs' complaint. Non-specific defendants wearing "combat gear with guns drawn" are alleged to have pushed out of the way an 8-year-old child who answered the door. (Compl. ¶ 37, Dkt. No. 2.) Then, officers are alleged to have "threatened [them] with firearms" while "multiple police officers . . . pointed guns at them,

[and] herded them into a single room where they were detained against their will." (*Id.* ¶ 38.) As pled, these factual allegations do not plausibly rise to the level of excessive force as prohibited by the Tenth Circuit because some physical coercion and the display of weapons is not categorically unreasonable, particularly before police have secured the premises. Plaintiffs do not allege that the show of force and display of guns continued after the premises were secured and the officers no longer had "reasonable cause to believe that person poses a danger to the officer and others." *Holland*, 268 F.3d at 1193. Furthermore, unlike the facts in *Ealum*, there is no specific factual allegation in the complaint that any particular officer pointed a gun directly at any particular child.

### iii. *Yelling and verbal threats*

Plaintiffs complain of nonspecific "yelling" by officers and a verbal threat of "the loss of her children" made to Mrs. Yocum. Verbal exchanges with subjects while executing a search warrant or making a seizure are "evaluated for Fourth Amendment reasonableness in light of the totality of the circumstances." *Holland*, 268 F.3d at 1194. In *Holland*, plaintiffs complained of officers' "foul and abusive language" such as expletives, as well as the erroneous and unnecessary answer of "probably" made to a child who asked if she were going to jail. *Id.* at 1184, 1194. While the *Holland* court admonished officers to be "firm and direct without being foul and abusive," it also stated ""[w]hile it seems unlikely that harsh language alone would render a search or seizure unreasonable, verbal abuse may be sufficient to tip the scales in a close case." *Id.* at 1194 (internal quotation mark omitted).

The totality of circumstances in this case are not a close call, even assuming the facts alleged by plaintiffs are true. There was a single allegedly untruthful verbal threat and yelling

that was not alleged to have included expletives. These do not tip the scale when the other factors considered in totality do not. The decision to use a forcible, "dynamic entry" in the execution of the search warrant was not unreasonable. Mild physical coercion, a display of weapons, and detention of innocent occupants such as alleged here during the execution of the warrant do not plausibly rise to the level of a constitutional violation. Thus, even if plaintiffs had alleged sufficient personal involvement to give fair notice, considered in totality, the remaining allegations do not plausibly state a claim for excessive force.

### C. Supervisory Liability Claims Against Sheriff Martinez and Chief Atkin

Under the pleading standard set forth in *Twombly* and *Iqbal*, plaintiffs have failed to plead sufficient factual matter to give rise to a plausible claim for supervisory liability against Summit County Sheriff Martinez and Syracuse City Police Chief Atkin. To begin with, specific facts are not alleged against either defendant. (Compl. pp. 13-20, Dkt. No. 2.) Plaintiffs' allegations against subordinate officers alone cannot give rise to a claim against Martinez and Atkin in their supervisory roles. "Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. There is no concept of strict supervisor liability." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal punctuation omitted). Instead, "supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Id.* This requires that plaintiffs establish, first, that "the supervisor's subordinates violated the constitution." *Id.* As explained above, plaintiffs have not plausibly alleged that any individual Summit County or Syracuse City police officer violated plaintiffs' constitutional rights. This alone precludes a claim for supervisory liability.

Even if plaintiffs had established a constitutional violation, however, they are required to "show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation, [which can include that] the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur." *Id.* (Internal quotation marks and citations omitted.)  They have failed to do so. The court evaluates the sufficiency of plaintiffs' complaint on these points by following the three steps outlined in *Iqbal*:  First, the court "tak[es] note of the elements a plaintiff must plead to state a claim;" second, identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and third, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." 556 U.S. at 675, 679.

### 1. Failure to Train

To state a claim for failure to train officers on the proper use of force in the execution of a search warrant, a plaintiff must show "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county or city] can reasonably said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). In the failure to train context, the Tenth Circuit also requires the plaintiff to show more than negligent failure to act, but that defendants were "on notice of the need for more or different training." *J.V. ex rel. C.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1298 (10th Cir. 2016).

Plaintiffs' failure to train allegations are conclusory restatements of the elements devoid of factual allegations. For example, they allege, in count one, that Summit County and Syracuse

City "failed to properly train officers . . . in the proper basis for detaining residents and children during the execution of a search warrant," and in count two, that plaintiffs failed to properly train officers "in the proper execution of search warrant consistent with Constitutional safeguards and principles" and "in the proper conduct of interviews and requests for consent." (Compl. ¶¶ 59, 66-68; Dkt. No. 2.) In count three, plaintiffs claim that defendants "knowingly, recklessly, and with deliberate indifference and callous disregard . . . failed to instruct, supervise, control and/or discipline on a continuing basis" concerning duties to refrain from a list of behaviors that appear to relate solely to Mr. Yocum rather than to the named plaintiffs.[3] (*Id.* at ¶ 75.) Count three also alleges that defendants did not "provide appropriate in-service or retraining" of officers. (*Id.* at ¶ 81.) These are alleged to be part of an "institutional culture" that "supports and encourages" constitutional violations. (*Id.* at ¶¶ 60, 68, 80.)

Beyond these conclusory allegations of the elements, plaintiffs allege no facts to establish an affirmative link between the supervisors and the alleged constitutional violation. They have not alleged any facts to show that either supervisor, let alone Summit County or Syracuse City, were on notice of the need for more or better training. They did not allege even a single incident of a named officer in either organization having previously engaged in the unconstitutional execution of search warrants that would suggest the need for further training, nor the existence of prior complaints, lawsuits, media reports, or communication from other government officials from which the need could be inferred. And, even if plaintiffs had pled facts to show that Summit County or Syracuse City should have provided training, plaintiffs have not alleged facts

---

[3] These duties included "unlawfully and maliciously" arresting and prosecuting, impounding a vehicle, withholding exculpatory evidence, etc., none of which facts are alleged to have occurred as to Mrs. Yocum and her three children.

13

to show that either supervisor or entity was "more than negligent in not providing it or that . . . the failure to train involved any element of deliberateness." *Albuquerque*, 813 F.3d at 1298. Even if plaintiffs had successfully alleged a constitutional violation by the supervisors' subordinates, because plaintiffs' failure to train and/or supervise allegations are conclusory and thus not plausible, the court finds them insufficient and dismisses them.

### 2. *Practice, Custom, or Policy*

Stating a claim for supervisory liability based on a practice, custom, or policy that sanctions unconstitutional conduct requires, at a minimum, factual allegations about the existence of such a policy. *See Dodds v. Richards*, 614 F.3d 1185 (10th Cir. 2010). Plaintiffs' complaint is merely conclusory: defendants allegedly had a "practice, custom and policy that led and allowed . . . officers to deprive Plaintiffs of their constitutional rights;" they "developed and maintained policies and customs using deliberate indifference to the constitutional rights of persons;" and "it was the policy and/or custom" of the defendants "to inadequately supervise and train its police officers." (Compl. ¶¶ 72, 74, 79; Dkt. No. 2.) In addition to their failure to specifically identify any single relevant policy created or maintained by Summit County or Syracuse City, the court notes that for this claim to survive plaintiffs have a heavy burden to identify the widespread existence of specific unconstitutional policies, customs, or practices at each of the numerous agencies they have alleged to be responsible. As a result, plaintiffs' allegations about practices, customs, and policies are conclusory, not plausible, and therefore must be dismissed, even if they had successfully pled a constitutional violation by the supervisors' subordinates.

       3. *Knew or Should Have Known, Power to Prevent Conduct, and Approval or Ratification of Conduct*

Finally, plaintiffs claim that Martinez and Atkin are liable for their subordinates' conduct because they knew or should have known that "the wrongs in this matter were about to be (or were being) committed;" they "had the power to prevent and/or aid in the prevention" of the constitutional violations; and because they "approved or ratified" the conduct of the police officers. (Compl. ¶¶ 76-78, 82; Dkt. No. 2.) While these elements can establish deliberate indifference sufficient to create an affirmative link between a supervisor's conduct and a subordinate's unconstitutional action, here, plaintiffs have done nothing more than state the elements; thus these are not factual allegations entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 664 (stating that a court need not accept as true allegations that are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements.")

Plaintiffs have failed to plead sufficient factual matter to give rise to a plausible claim for supervisory liability against Summit County Sheriff Martinez and Syracuse City Police Chief Atkin, even if plaintiffs had successfully pled an underlying constitutional violation, and therefore the court dismisses all claims against them.

### D. Municipal Liability Claims Against Summit County and Syracuse City

"A municipality may not be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior." *Fail v. West Valley City*, No. 2:04-cv-1094 PGC, 2006 WL 842910 (D.Utah Mar. 28, 2006). Furthermore, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151 (10th Cir. 2016); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447-48 (10th Cir. 1990);

*Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988). Having previously determined that plaintiffs have not plausibly alleged a constitutional violation by any of the individual Summit County and/or Syracuse City defendants, plaintiff's first, second, and third causes of action against the municipal defendants must necessarily fail.

## CONCLUSION

For the reasons explained above, the court GRANTS the Summit County Defendants and Syracuse Defendants' motion to dismiss each of plaintiffs' causes of action against them with prejudice. (Dkt. No. 6.)

DATED this 2nd day of February, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge