Joseph Jardine, USB No. 8889
Peter D. Goodall, USB No. 9718
**JARDINE LAW OFFICES, P. C.**
140 North Union Avenue, Suite 205
Farmington, UT 84025
E-mail: info@jlodefense.com
Telephone: 801/451-9555
Fax: 801/451-7581
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SU-YI YOCUM, ASIA YOCUM, ADENA YOCUM, and AMBER YOCUM,<br>Plaintiffs,<br><br>vs.<br><br>STATE OF UTAH, UTAH ATTORNEY GENERAL'S OFFICE, ATTORNEY GENERAL SEAN REYES, WEBER COUNTY, WEBER COUNTY SHERIFF'S OFFICE, SHERIFF TERRY THOMPSON, SUMMIT COUNTY, SUMMIT COUNTY SHERIFF'S OFFICE, SHERIFF JUSTIN MARTINEZ, SYRACUSE CITY, SYRACUSE POLICE DEPARTMENT, CHIEF GARRET ATKIN, INVESTIGATOR RON BRIDGE, SPECIAL AGENT WEIR, SPECIAL AGENT PURDY, SPECIAL AGENT ZIMMERMAN, SPECIAL AGENT BAGGS, SPECIAL AGENT WHITE, SPECIAL AGENT RENFRO, SPECIAL AGENT WARE, SPECIAL AGENT CODY TRACY, SPECIAL AGENT RICHMOND, CAMERON HARTMAN, JESSICA FARNSWORTH, PATTY REED, ZACHARY SNOW, and JOHN DOES 1-10,<br>Defendants. | **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE PURSUANT TO RULE 41 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**<br><br>Case No. 1:16cv98<br><br>JUDGE CLARK WADDOUPS |

NOW COMES Plaintiffs, SU-YI YOCUM, ASIA YOCUM, a minor, by and through her next friend and parent Su-Yi Yocum, ADENA YOCUM, a minor, by and through her next friend and parent Su-Yi Yocum, and AMBER YOCUM, a minor, by and through her next friend and parent Su-Yi Yocum, (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys of record, Peter Goodall and Joseph Jardine, who hereby submit the following Reply Memorandum in Support of their Motion to Voluntarily Dismiss the above-captioned case without prejudice.

**ARGUMENT**

On February 2, 2017, this Court dismissed the causes of action against the Summit County defendants and the Syracuse City defendants for the following independent and alternative reasons. The Court found that the complaint in the above-captioned case failed to provide "Fair Notice" to the respective defendants. More specifically, the Court found that "Plaintiff's complaint "fails to isolate the allegedly unconstitutional acts of each defendant, and thereby does not provide adequate notice as to the nature of the claims against each." *See* February 2, 2017, Order of the Court, quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The Court found that Plaintiffs failed to plead with specificity "who is alleged to have done what to whom." *Id*. at p. 6; quoting *Robbins*, 519 F.3d at 1250. In the alternative, the Court held that the Complaint failed to state a claim because the nature of the entry, as alleged in the complaint, was within constitutional bounds. *Id*. at 7-8.

The State defendants claim to have an audio recording of the dynamic entry in this case. Counsel for the Summit County and Syracuse City defendants made reference to a video recording of the entry during oral arguments in this case. Both of the reasons for dismissal in this case may be addressed by such evidence. Importantly, Plaintiffs are children. This affects their recollection of the dynamic entry. The only adult plaintiff, Ms. Su-Yi Yocum, was separated from her children for part of the interaction and so did not personally witness all relevant events.

Counsel herein was not told of the existence of either of these recordings during eighteen months of litigation in Utah State Court. One issue raised before the State Court was whether the defendant therein, Mr. Jason Yocum, was "in custody" for the purposes of a *Miranda* analysis. (*See* Exhibit 1, Supplemental Memorandum filed by Weber County Attorney's Office). The nature of entry and the existence of a recording thereof were directly implicated by the Weber County Attorney's Office. Nonetheless, neither Mr. Yocum nor the Plaintiffs herein were put on notice that any of these recordings existed. Plaintiffs' Counsel filed a timely discovery request pursuant to Rule 16 of the Utah Rules of Civil Procedure that would have required the disclosure of this information. (*See* Exhibit 2, Discovery Request). Plaintiffs' Counsel was diligent in this regard and could not, through the use of due diligence, have known of these audio and visual recordings before the filing of the civil complaint in the instant case.

Rule 41 of the Federal Rules of Civil Procedure permits a Court to dismiss claims "on terms that the court considers proper." In this case, a dismissal without prejudice is appropriate as the Court's concerns expressed in its memorandum decision may be addressed by evidence that

was previously unavailable to Plaintiff's Counsel notwithstanding the use of due diligence in this matter.

## CONCLUSION

For the foregoing reasons, and pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs ask this Court for an order of voluntary dismissal without prejudice in the above-captioned case against the remaining defendants in this action.

Signed electronically this 6th day of March, 2017.

JARDINE LAW OFFICES, P.C.

By: /s/ Joseph Jardine USB #8889 .
Joseph Jardine
Attorney for Plaintiffs

**CERTIFICATE OF DELIVERY**

I hereby declare that I electronically filed a true and correct copy of the foregoing Memorandum this 6th day of March, 2017, and served a copy of the same via the court's CM/ECF System to the following:

Heather White
Snow Christensen & Martineau
PO Box 45000
Salt Lake City, Utah 84145

Joni J. Jones
UTAH ATTORNEY GENERAL'S OFFICE (160-6-140856)
LITIGATION UNIT
160 E 300 S 6TH FL
PO BOX 140856
SALT LAKE CITY, UT 84114-0856

Frank Mylar
MYLAR LAW PC
2494 BENGAL BLVD
SALT LAKE CITY, UT 84121
(801)858-0700
Email: andrew.r.hopkins@gmail.com

/s/ Rodney Gray
Legal Assistant

EXHIBIT 1

Joseph Jardine, USB No. 8889
**JARDINE LAW OFFICES, P. C.**
140 North Union Avenue, Suite # 205
Farmington, Utah 84025
E-mail: info@jlodefense.com
Telephone: 801/451-9555
Fax: 801/451-7581

Attorneys for Defendant

IN THE SECOND JUDICIAL DISTRICT COURT, OGDEN DEPARTMENT

WEBER COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE OF UTAH,<br><br>Plaintiff,<br><br>vs.<br><br>JASON BRYCE YOCUM,<br><br>Defendant. | **NOTICE OF APPEARANCE, ENTRY OF NOT GUILTY PLEA, REQUEST FOR PRETRIAL HEARING AND DEMAND FOR SPEEDY JURY TRIAL**<br><br>Case No. 151900570<br><br>Judge W. Brent West |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Attorney Joseph Jardine, on behalf of Jason Bryce Yocum, Defendant: hereby enters his appearance as counsel, enters not guilty pleas on all charges, requests a Pretrial Hearing and demands a speedy jury trial in the above-entitled case under the Sixth Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment in *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18

L.Ed.2d 1 (1967), and under the Utah Constitution, Article I, section 12.

DATED: March 18, 2015.

JARDINE LAW OFFICES, P.C.


By:/ s/ Joseph Jardine
    Joseph Jardine
    Attorney for Defendant

## CERTIFICATE OF DELIVERY

The undersigned hereby certifies that on March 18, 2015, a true and correct copy of the Notice of Appearance, Entry of Not Guilty Plea, Request for Pretrial Hearing, and Demand for Speedy Jury Trial was served by via the Utah Court's Notice of Electronic Filing system addressed to the following:

Weber County Attorney's Office
2380 Washington Blvd., suite 230
Ogden, UT 84401


/s/ Rodney A. Gray
Legal Assistant

Joseph Jardine, USB No. 8889
**JARDINE LAW OFFICES, P. C.**
140 North Union Avenue, Suite # 205
Farmington, Utah 84025
E-mail: info@jlodefense.com
Telephone: 801/451-9555
Fax: 801/451-7581

Attorneys for Defendant

IN THE SECOND JUDICIAL DISTRICT COURT, OGDEN DEPARTMENT

WEBER COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE OF UTAH,<br><br>Plaintiff,<br><br>vs.<br><br>JASON BRYCE YOCUM,<br><br>Defendant. | **REQUEST FOR DISCOVERY INCLUDING *BRADY, GIGLIO* & *BAGLEY* INFORMATION, AND FOR RULE 404(b) EVIDENCE**<br><br>Case No.151900570<br><br>Judge W. Brent West |

Pursuant to the provisions of Rule 16 of the Utah Rules of Criminal Procedure, and the due process clauses of the Fifth and Fourteenth amendment of the United States Constitution and Article I, Section 7 of Utah Constitution, pursuant to *Brady v. Maryland*, 373 U.S.83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and *United States v. Bagley*, 473 U.S. 667 (1985), and pursuant to Rule 404(b) of the Utah Rules of Evidence, the defendant, Jason Bryce Yocum, by and through his attorney, requests the prosecution deliver a copy, **in electronic format (e-mail or cd) preferably,** or if not in electronic format, a hard copy, and to

allow inspection and scientific analysis, of all of the evidence of which the State is aware in the above-entitled case including without limitation the following:

1.     All written or recorded statements of the defendant or co-defendants. The substance of any oral statements which the prosecution intends to offer in evidence which was made before or after arrest to any person then known to the defendant to be a government agent;

2.     The criminal record of the defendant;

3.     All Spillman Records related to the Defendant and including any aliases used or believed to be used by the Defendant and whether part of a police report or not;

4.     All physical evidence seized in the investigation of the alleged offense herein, including results of any scientific analysis of any and all evidence seized for the purpose of the prosecution of this case;

5.     Evidence known to the prosecution that tends to negate the guilt of the defendant, mitigate the guilt of the defendant or mitigate the degree of events for reduced punishment;

6.     All written reports, statements and any other matters relating to the investigation of the allegations herein, including copies of search warrants, affidavits for search warrants and any other police reports or prosecution reports in the possession of the police or prosecution;

7.     The names, addresses and telephone numbers of all witnesses the prosecution intends to call in the trial of this matter;

8.     The names, addresses and telephone numbers of all expert witnesses and a

summary of their expected testimonies at trial;.

9. A list of exhibits the prosecution intends to offer in the trial this matter;

10. Any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions of thereof, which are in the possession, custody or control the prosecution which are material to the preparation of the defense or are intended for use by the prosecution as evidence in its case in chief or were obtained from or belonged to the defendant;

11. Any physical or mental examinations, any scientific test, experiments or reports, or copies thereof, which are in the possession, custody or control the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the prosecution and are material to the preparation of defense or are intended for use by the prosecution in its case in chief;

12. Any videos or pictures or drawings in the possession of the prosecutor or any police agency which may be used for defense purposes or are intended for use by the prosecution;

13. The name and address of each cooperating/law enforcement witness;

14. The case number and name of the prosecutions in which the cooperating/law enforcement witness utilized in this case has previously been utilized as a cooperating/law enforcement witness;

15. The case name and numbers of trials or evidentiary hearings at which the cooperating/ law enforcement witness has testified concerning his or her own prior criminal activity, payments or rewards provided to him or her by the government, efforts made to induce

others to participate in criminal activity, or other purported law enforcement related matters;

16. Any ledger, sheet, or other document which details the sum to the cooperating law enforcement witness or his/her family in this and other cases in which the witness has assisted the government as well as the purpose of each such payment;

17. Any information, whether or not memorialized in a memorandum, agent's report or other writing, regarding promise of immunity, leniency, preferential treatment or other inducements made to the cooperating/law enforcement witness or any family member, friend or associate of the witness in exchange for the witness' cooperation, including the dismissal or reduction of charges, assisting in matters of sentencing an/or deportation or promises regarding payments for expenses or testimony or eligibility for any award or reward. In addition to information regarding payments, promises of immunity, leniency, preferential treatment or other inducements made to the cooperating/law enforcement witnesses, any records or information regarding payments, promises of immunity, leniency, preferential treatment offered or afforded any family member, friend or associate of any cooperating/law enforcement witness in exchange for said witness's cooperation.

18. Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, etc., by INS) made by the government to any cooperating/law enforcement witness or family member or associate of the witness, including information as to the underlying conduct precipitating such investigations.

19. Any statement made or information or document provided by a cooperating/law enforcement witness that conflicts in part or in whole with: (1) the statement of another

prospective witness, (2) a prior statement made by the same cooperating/law enforcement witness with regard to the subject matter of the expected trial testimony of the witness, or (3) any other document or witness.

20.    The name and current whereabouts of any witness to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by or summary of any interview with such a witness.

21.    Any report, document or information which details the criminal activities of the cooperating/law enforcement witness which were undertaken by him without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute.

22.    FBI rap sheet, NCIC printout, NADIS, EPIC, ATS, TECS, IDENT and any other records available to the Government reflecting the arrest, conviction and investigative history of the cooperating/law enforcement witness.

23.    Information concerning prior misconduct by the cooperating/law enforcement witness in the performance of his role as an informant including any prior refusal of the informant to testify for or assist the government; any prior allegation that the informant entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the information by any law enforcement agency.

24.    Information concerning misconduct by any witness other than in his/her role as a cooperating/law enforcement witness, including misconduct that reflects a lack of candor, truthfulness or law-abiding character of such witness, such as uncharged criminal conduct or

fraud.

25.     All information, records, and transcripts which in any way indicate or reveal that any cooperating/law enforcement government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information to:

        a.      Any state or federal law enforcement officer or agency;

        b.      any state jury or federal grand jury;

        c.      Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding.

26.     Any "records" maintained by law enforcement agencies relating to the cooperating law enforcement witness utilized in this case, including records that the witness was:

        a.      Given a code name

        b.      Given the assumed/false identity;

        c.      Any reasons for cooperation;

        d.      Given a polygraph exam;

        e.      Briefed on entrapment;

        f.      Contracts executed with any law enforcement agency;

        f.      Any release forms executed by the witness;

        h.      Records revealing the witness was advised to pay federal income taxes;

        i.      Records indicating that he/she could not violate law;

        j.      Records which require him to protect his/her false identity;

        k.      Records that the witness cannot use any illegal drugs;

l. Records that the witness consented to recording any conversation with any party;

m. Contingency Fee Agreement with the government.

27. If given a polygraph exam, the results of any polygraph examination performed on any cooperating/law enforcement witness as well as any information concerning the failure of any cooperating/law enforcement government witness to submit to a polygraph examination.

28. Any government agency files or other information revealing matters relevant to the cooperating/law enforcement witness' credibility, mental or physical health, narcotic or alcohol use; or any other dependency.

29. All information and records revealing any potential impairment of the capacity of any cooperating/law enforcement witness to observe, recollect and testify about the events giving rise to the charges filed in this case including impairments of sight, hearing, memory, language, or any other physical or psychological disability.

30. All information and records indicating that any cooperating/law enforcement witness (1) may have suffered from any mental or emotional disease, disorder, illness or defect at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years.

31. All information and records indicating that the cooperating/law enforcement witness may have used cocaine, marijuana, another controlled substance, used alcohol to excess at any time during the time span alleged in the indictment filed in this case.

32.     All information or records indicating that the cooperating/law enforcement witness sought or received treatment(s) for any substance abuse problem (including alcohol) at any time within the past five years.

33.     Applicable records of the United States or Utah State Probation Department if the witness has been placed on probation or any Pre-Sentence Investigation "PSI" that has been conducted.

34.     The Defendant requests that the court order the government to provide "rap sheets" so that the Defendant can impeach government witnesses by means of showing prior convictions under Rule 609, as well as any bias, prejudice, or interest the witness may have because of pending prosecutions.

35.     The Rules of Evidence permit a defendant to cross-examine a witness as to specific instances of misconduct if that evidence impeaches the witness' character for truthfulness.  See Rule of Evidence 608(b).  The Defendant specifically requests any evidence of prior acts of untruthfulness of the cooperating/law enforcement witness, or misconduct establishing lack of character for veracity of which the government has knowledge.

36.     The Defendant requests that the government be ordered to disclose any physical, mental or other defect of a government witness which might result in lack of ability to perceive or recollect of the cooperating/law enforcement witness.

37.     This request embraces all remaining information which impeaches the witness' character for veracity and his partiality, including bias, interest, motive, and corruption.

38.     If the government elects to seek to introduce statements under Rule of Evidence

801(d)(2)(E), the Defendant requests that the government be ordered to disclose material impeaching information concerning the credibility of the hearsay declarant whose statement is being admitted pursuant to Rule 801(d)(2)(E).

39.     Verbatim copies or copies of transcripts of tape recordings of all statements by all persons, including any law enforcement officers which were taken in connection with the investigation filed, pending, completed and/or otherwise made, of any complaints of use of improper interrogation techniques, illegal search and seizure, illegal arrest, racial discrimination, use of excessive force, harassment, or dishonesty, by the officers listed above, including, but not limited to, those made in relation to the case at bar.

40.     Verbatim copies of all records or reports of investigation filed, pending, completed and/or otherwise made, and all other writings pertaining to the use of improper interrogation techniques, illegal search and seizure, illegal arrest, racial discrimination, use of excessive force, harassment, or dishonesty, by any law enforcement officers involved in this case contained by the Police Department's personnel files or offices.

41.     Verbatim copies of all records, tapes or transcripts, reports of investigation, witness statements, filed, pending, completed and/or otherwise made, and all other writings pertaining to the use of improper interrogation techniques, illegal search and seizure, illegal arrest, racial discrimination, use of excessive force, harassment, or dishonesty, in the Police Department's internal investigation files or offices, including those having to do with the arrest of the Defendant.

42.     Information related to whether or not discipline was imposed on any of the law

enforcement officers in this case in any incident involving the use of improper interrogation techniques, illegal search and seizure, illegal arrest, racial discrimination, use of excessive force, harassment, or dishonesty, including the incident of the arrest of the Defendant.

43.     Any and all information contained in personnel or internal investigation files which indicates and/or identifies previous employment discipline in law enforcement related work in this case.

44.     Any and all information connected with the Police Department's internal affairs investigation into these incidents, including, but not limited to:

      a.     Name and addresses of persons contacted and interviewed;

      b.     Statements of persons contacted and interviewed;

      c.     Notes of internal affairs investigators; outcome and conclusion of internal affairs investigation.

45.     That as to all items requested, the information will be furnished regardless of the outcome, disposition, or result of the complaint, report, or investigation.

46.     Any and all job performance evaluations or reports on job performance and any and all applications for promotion for any of the officers investigating this case.

47.     Any and all records or other evidence of misplacement, loss, or mishandling of evidence by any of the law enforcement and investigating officers in this case.

48.     Any and all records or other evidence of contamination of evidence through the inadvertence or negligence of any of the law enforcement and investigating officers in this case.

49. All witness lists of witnesses to be called by the government at trial.

50. All exhibits to be presented and introduced by the government at trial.

51. Any and all photographs taken of the Defendant including booking photos or photos taken after the Defendant was booked.

52. All Spillman Records related to the Defendant and including any aliases used or believed to be used by the Defendant.

53. All 911 dispatch call logs and recordings of all calls related to this matter.

54. All evidence the government may seek to introduce pursuant to Rule 404(b) of the Utah or Federal Rules of Evidence.

**Again, an electronic copy of the above-referenced discovery is preferable; otherwise, a paper copy will suffice.** In the event the above-described items have not been reduced to writing, the defense requests that the prosecution to give the defense the above-described information in any way that is practicable.

Dated: March 18, 2015.

JARDINE LAW OFFICES, P.C.

By: /s/ Joseph Jardine
Joseph Jardine
Attorney for Defendant

**CERTIFICATE OF DELIVERY**

The undersigned hereby certifies that on the March 18, 2015, a true and correct copy of the Request for Discovery, was served via the Utah Court's Notice of Electronic Filing addressed to the following:

Weber County Attorney's Office
2380 Washington Blvd., suite 230
Ogden, UT 84401

/s/ Rodney A. Gray
Legal Assistant

EXHIBIT 2

LETITIA J. TOOMBS, #12696
WEBER COUNTY ATTORNEY'S OFFICE
2380 WASHINGTON BLVD., STE 230
OGDEN, UTAH 84401
TELEPHONE: (801) 399-8377

**IN THE SECOND DISTRICT COURT OF WEBER COUNTY, STATE OF UTAH**

| | |
|---|---|
| STATE OF UTAH,<br><br>Plaintiff,<br><br>vs.<br><br>JASON BRYCE YOCUM,<br><br>Defendant. | **STATE'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**<br><br>Case No. 151900570<br><br>Judge: W. BRENT WEST |

The State offers this supplemental brief on the issue of whether Mr. Yocum was in custody for purposes of the 5th Amendment at the time of the interview. The State's argument is set forth below.

## STATEMENT OF FACTS[1]

On March 12, 2015, the Utah Internet Crimes Against Children Task Force served a search warrant at the Defendant's home. After entering the home and explaining to the occupants that they were there to serve a search warrant, Agent Bridge asked the Defendant if he would be willing to speak with him in the Mobile Lab. [Motion Hearing Transcript (hereinafter "MH"), p. 24, ln 6-7]. At this point in time, although there were multiple officers throughout the home conducting the search, there were no guns displayed and no show of force. *Id.* at p. 33, ln 15-19. The Defendant agreed to

[1] These facts are drawn from the preliminary hearing held in March 12, 2012 as cited herein and are supplemented by the police reports and audio recordings referenced therein.

accompany the officer to the Mobile Lab, which was parked just outside the home, and speak with him. Defendant was not forced to enter the Mobile Lab. *Id.* at p.24, ln 21-24. He was not ordered to go there nor was he handcuffed or otherwise restrained or placed into custody. *Id.* at p. 34, ln 20-24. The door from the interview lab which led directly out to his yard was unlocked and easily accessible to the Defendant. *Id.* at p. 38. Although Defendant was read a *Miranda* warning, he was not told that he was under arrest. Indeed, he was specifically told by Agent Bridge that the officers could not force him to leave his home that night. [See *Recording of Interview*, 13:15-13:34].

**ARGUMENT**

Defendant seeks to suppress statements and evidence obtained during an interview on March 12, 2015 as violating his *Miranda* right to counsel. that he invoked his right to counsel while in custody on that date. Prior briefings have addressed the voluntariness of Defendant's waiver of his right to counsel and all arguments and facts are incorporated herein by reference. Although the State conceded custody in a previous argument, subsequent research causes a reversal of that position. Defendant was not in custody on March 12, 2015 during the interview with Agent Bridge and Detective Weir for purposes of the Fifth Amendment. It is important to fully explore the distinction between detention for purposes of the Fourth Amendment and custody for purposes of the Fifth Amendment. In this case, although the Defendant was detained while the search warrant was being executed, he was not in custody. Accordingly, his incriminatory statements made without the presence of counsel are admissible.

**I. THE FIFTH AMENDMENT DID NOT APPLY BECAUSE DEFENDANT WAS NOT IN CUSTODY DURING THE INTERVIEW.**

"No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. Originally, this right was protected in part by the judicially created prophylactic rule in *Miranda v. Arizona*, 384 U.S. 436 (1966). Over time *Miranda* hardened into a constitutional mandate. *Dickerson v. United States*, 530 U.S. 428, 432, 438, 444 (2000).[2] *Miranda* is not implicated, however, unless "there is both (1) custody . . . and (2) interrogation." *State v. Gallegos*, 2009 UT 42, ¶ 25, 220 P.3d 136. This means that without the compelling or coercive nature of custody a person's Fifth Amendment right against self-incrimination does not apply. *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009) (The *Miranda-Edwards* line of cases applies "only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply."); *United States v. Bautista*, 145 F.3d 1140, 1147 (10th Cir. 1998) ("Absent either a custodial situation or official interrogation, *Miranda* and *Edwards* are not implicated.").

The United States Supreme Court has observed:

> [P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'

*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The merit of Defendant's Motion, therefore, depends upon the threshold question of whether Defendant was "in custody" on March 12, 2015. He was not.

---

[2] The analysis and application of *Miranda* depend upon whether the custodial suspect being interrogated has invoked his right to remain silent, *Michigan v. Mosley*, 423 U.S. 96 (1975), or his right to counsel, *Edwards v. Arizona*, 451 U.S. 477 (1981); *Minnick v. Mississippi*, 498 U.S. 146 (1990), because the standard governing each is different. Defendant's Motion is based on the right to counsel prong.

During Oral Argument, the Court expressed some concern that the Defendant had been given a *Miranda* warning and therefore, on some level this interview had become custodial. However, simply "'giving a *Miranda* warning does not, in and of itself, convert an otherwise non-custodial interview into a custodial interrogation.'" *Erving*, 147 F.3d at 1247 n.5 (quoting *United States v. Bautista*, 145 F.3d 1140, 1148-49 (10th Cir. 1998)). This issue is discussed in greater detail below.

Custody means formal arrest or its functional equivalent. *Stansbury v. California*, 511 U.S. 318, 322 (1994) ("'[T]he ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"); *Berkemer v. McCarty*, 468 U.S. 3138, 3150-51 (1984) (holding that *Miranda* becomes "applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest,'" *i.e.*, the curtailment rises to a level "fairly characterized as the functional equivalent of formal arrest"); *Gallegos*, 2009 UT 42, ¶ 26 ("Custody occurs when an individual's 'freedom of action is curtailed in a degree associated with formal arrest.'"); *State v. Mirquet*, 914 P.2d 1144, 1146 (Utah 1996) (same; also observing that this test is distinct from the "not free to leave" test, which is a Fourth Amendment seizure test that is "broader than the *Miranda* standard;" thus, "[a] person may be 'seized' for Fourth Amendment purposes but not be 'in custody' for Fifth Amendment purposes")[3].

Utah law defines a formal arrest as "an actual restraint of the person arrested or submission to custody." Utah Code Ann. § 77-7-1. It involves an element of

[3] Although the State contends that being told to wait in the interview room while Agent Bridge left still does not constitute custody for purposes of the 5th Amendment, it is important to note that, at the point the officer asks him to wait in the trailer Agent Bridge leaves and no questions are asked until after a second lengthy warning is given and the Defendant waives. *See,* Interview Recording "Yocum 2".

"detention." *Id.* Defendant was not handcuffed, restrained, or taken into formal custody. He was not informed that he was under arrest or that he was not free to leave. Rather, he was simply interviewed. He consented to both interviews and voluntarily participated in them. The only remaining issue, therefore, is whether Defendant's freedom of action was curtailed to a degree associated with formal arrest. It was not.

Whether the functional equivalent of a formal arrest is present is an objective determination, asking "whether 'a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest.'" *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008);[4] *accord Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (stating that an interrogator's unarticulated subjective intent is irrelevant to a custody analysis). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation . . . ." *Stansbury*, 511 U.S. at 322; *Jones*, 523 F.3d at 1240 ("The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive.").

Because all of the circumstances must be considered, courts have "avoid[ed] hard line rules and instead allow[ed] several non-exhaustive factors to guide [them]." *Id.* However, after enumerating some of the non-exhaustive factors courts within the Tenth Circuit consider, the United States Court of Appeals for the Tenth Circuit added this caveat: "Although these factors are useful, we emphasize that we must look to the totality of the circumstances and consider the police-citizen encounter as a whole, rather than picking some facts and ignoring others." *Id.* For "'the ultimate inquiry is simply whether

[4] "A reasonable person 'does not have a guilty state of mind and does not have peculiar mental or emotional conditions that are not apparent to the questioning officer.'" *Id.* Thus, just because the person questioned may be guilty and may subjectively feel that he is being discovered does not convert the encounter into a custodial interrogation.

there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Stansbury*, 511 U.S. at 322.

With this caveat and ultimate inquiry in mind, some factors to consider include whether a suspect is made aware that he is free to leave, free to not answer, and free to terminate the interview; the nature and form of the questioning; whether police dominated the encounter by separating the suspect from others or by being several in number; whether there were objective indicia of arrest like displaying weapons, physically touching the suspect, using language or a tone that implies that compliance is mandatory; where the interrogation occurs; the length and form of the interrogation; and whether the investigation focused on the accused. *See Jones*, 523 F.3d at 1240; *Gallegos*, 2009 UT 42, ¶ 26 (quoting *Salt Lake City v. Carner*, 664 P.2d 1168, 1171 (Utah 1983)).

In understanding and applying these factors, a court must consider that an interrogation of a suspect in a police station, or in this case, a police mobile interview room, does not by itself convert the interrogation into a custodial interrogation. *Mathiason*, 429 U.S. at 495. *See also*, *California v. Beheler*, 463 U.S. 1121, 1122, 1125 (1983). Focusing an investigation on one noncustodial suspect, moreover, "does not transform the interview into a custodial interrogation." *United States v. Erving*, 147 F.3d 1240, 1247 n.4 (10th Cir. 1998); *Beckwith v. United States*, 425 U.S. 341, 347 (1976) (holding that "*Miranda* implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"). Finally, as stated above "'giving a *Miranda* warning does not, in and of itself, convert an otherwise non-

custodial interview into a custodial interrogation.'" *Erving*, 147 F.3d at 1247 n.5 (quoting *United States v. Bautista*, 145 F.3d 1140, 1148-49 (10th Cir. 1998)).

Lastly, it is important to note that Utah courts at one time rigidly applied the four factors from *Carner*, considering them to provide broader protections than those afforded under the United States Constitution. *State v. Wood*, 868 P.2d 70, 82 (Utah 1993). However, "'a State may not impose . . . greater restrictions [on police activity] as a matter of *federal constitutional law* when this Court specifically refrains from imposing them.'" *Thompson v. Keohane*, 516 U.S. 99, 115 (1995) (quoting *Oregon v. Hass*, 420 U.S. 714, 719 (1975) (alterations in original)). The Utah Supreme "Court has never specifically held that *Miranda*-type warnings are required under the Utah Constitution. *State v. Mirquet*, 914 P.2d 1144, 1147 n.2 (Utah 1996). Accordingly, the Utah Supreme Court has "disavow[ed]" *Carner* to the extent it exceeds or conflicts with federal constitutional law. *Id.* Utah law, therefore, tracks federal constitutional law in this area.

Here, Defendant voluntarily agreed to speak with Agent Bridge. He voluntarily accompanied Agent Bridge across the yard and into the mobile interview room. He was not handcuffed. He was not ordered to go with Agent Bridge.

Defendant was not placed in a holding cell. He voluntarily accompanied Agent Bridge to an interview room where he was interviewed. During the break between interviews, he waited unrestrained in the mobile lab. He was not cuffed, the door was not locked, and he was not forced to wait there.[5] There was no evidence that either Agent Bridge or Detective Wier unholstered their weapons, restrained Defendant's ability to move freely, physically touched, shouted at, or made demands of Defendant, or

[5] He was simply asked to wait there while Agent Bridge left because the search of the house was still ongoing.

threatened him. His freedom of movement, moreover, was at no time restrained, not even approximating that degree associated with formal arrest.

The mere fact that the interview was realized in a police interview room[6] and the fact that Agent Bridge gave Defendant his *Miranda* rights, without more, did not convert the situation into a custodial interrogation. In short, there were no objective indicia of arrest or coercion and the Fifth Amendment was not implicated. Instead, what governed the interview was the Defendant's consent, and the giving of *Miranda* only validates Defendant's informed consent.

> In a society based on law, the concept of agreement and consent should be given a weight and dignity of its own. Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding. When this exchange takes place, it dispels inferences of coercion.

*United States v. Drayton*, 536 U.S. 194, 207 (2002).

Because he was not in custody, Agent Bridge did not have to Mirandize him. Because he was not in custody, his reference to an attorney did not implicate *Miranda* or *Edwards*. Detective Ramsey, therefore, could have properly re-approached and re-interviewed Defendant, again seeking Defendant's consent to speak. This was accomplished when the Defendant indicated a willingness to speak and the Agent stopped him and informed him that there was a process that needed to be followed. Again, this process, while not required because the Defendant was not in custody, informs the Defendant of his rights and reinforces the willingness of the conversation.

## II. BECAUSE QUESTIONING OF THE DEFENDANT WAS NONCUSTODIAL, THE *SHATZER* RULE DOES NOT APPLY.

[6] Even less confining given the location just outside his own residence.

In *Maryland v. Shatzer*, 559 U.S. 98 (2010), the United States Supreme Court held that the judicially prescribed prophylaxis supporting its *Edwards* rule dissipates after 14 days have passed from the time the custodial suspect invokes his right to counsel and is released from custody. However, *Shatzer* is not implicated unless the Defendant has been first arrested or been subject to its functional equivalent, has been Mirandized, and has unequivocally invoked his Fifth Amendment right to counsel. Custody was not at issue in *Shatzer*. *Id.* at 98 ("No one questions that *Shatzer* was in custody for *Miranda* purpose during the interviews . . . ."). Here, unlike the defendant in *Shatzer*, Defendant was not in custody. Therefore, for the reasons discussed under Point Heading I above, this Court need not reach *Shatzer* because Defendant was not "in custody" during the interview.

## CONCLUSION

For the foregoing reasons, therefore, suppression in this case is not warranted and the State respectfully moves this Court to DENY the Defendant's Motion to Suppress.

RESPECTFULLY SUBMITTED this ~~21st~~ 28th day of August, 2015.

Letitia J. Toombs
Deputy Weber County Attorney

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing STATE'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS was hand delivered or mailed, postage pre-paid, to:

JOSEPH JARDINE
140 NORTH UNION AVENUE, STE 205
FARMINGTON, UT 84025

DATED this 28 day of AUGUST, 2015.

Weber County Attorney's Office

a lot like an RV. Is that what it is?

A It looks like an oversized UPS truck.

Q All right. So you took him out of the house to the interrogation room in the truck?

A The interview room, that's correct.

Q Did Mr. Yocum have a choice of going with you or not?

A Yes, he did. I requested that he accompany me and he did.

Q When you entered the residence, did you have guns drawn?

A Not me because I greeted a small child, so no, I did not.

Q Did other officers present with you have guns drawn?

A They were behind me. I wouldn't be able to speak on their behalf of what their actions were.

Q Would you agree with me that there was a show of force by the officers?

A Absolutely. A search warrant is a show of force.

Q And so this isn't a consensual encounter, correct?

A No, it's not.

Q And if Mr. Yocum says he didn't want to go with you to the interview room, what would have happened?

A I would have said okay can we talk right here. I would have tried to engage him in a conversation.

Q I see. Now, when you started your interview with

me see how am I going to state this. It would be very difficult for a user on the outside unfamiliar with the residence to access the network.

Q Okay. So if it's password protected, the information that is associated with the IP address is coming most likely from inside the house?

A That's correct.

Q And I believe you testified that the drive is password protected?

A Yes, it is.

Q Okay. Let's switch gears a little bit and talk to the interview or go to the interview. You indicated that you asked him to come to the interview room with you?

A I did.

Q At that point in the conversation did you have a gun displayed?

A No.

Q Did any of the others have their guns displayed?

A No.

Q Now, when you enter on a search warrant, kind of tell me why guns may or may not be displayed?

A Obviously we're unfamiliar with the residence, what's going on in there, whose prepared for us to come into their house with any kind of firearm. If firearms are readily accessible, law enforcement is going into a residence blind so

being prepared is the first course of action.

Q Okay. And specifically dealing with this case, once you get into the home and you realize the first person greeting you is a small child I think you said, does that tone, if you will, kind of change?

A Absolutely.

Q How does it change?

A Obviously very soft, kind and gentle which, I mean, the very first thing I did is the young child opened the door. I immediately called her sweetie, you know, stepped inside the house. At that time I was greeted by an adult female. I told the adult female, you know, to stand in a particular location to allow the residence to be secured.

Q Okay. And you indicated that you have a search warrant?

A Correct.

Q So fair to say you amped everything down at this point?

A Yes.

Q Okay. He had the opportunity to tell you no I don't want to go out to the interview room?

A He did.

Q But he went?

A He did.

Q And in this case you went out there and you began

Q The mobile interview room that you have.
A We're going to call it the mobile forensic lab.
Q Mobile forensic lab. MFL?
A Yes, sir.
Q You say it's about the size of a UPS truck?
A It's a little bit longer. We got the extended version so that we could put the interview room in the back of it.
Q Still pretty tight quarters?
A It's 7 feet, 8 feet across, large couch on each side with a table in between. There's quite a bit of room to move around in there.
Q How many doors in there?
A Two.
Q So one leading out and one going into the rest of the truck?
A Correct.
Q Where was Mr. Yocum seated?
A Across on a couch, on a sofa.
Q More towards the middle of the truck or more towards the end of the truck?
A I'm going to say he was right about the middle of the interview room. He chose where he wanted to sit.
Q So the door closest to him would lead further into the truck?

A No, like I said, I believe he was in the very middle so he could have chosen either location.

Q I see. Is this an interview technique that you use often?

A You're going to have to elaborate on that question. I don't understand.

Q When somebody asks for an attorney, do you continue to talk to them after they've asked for an attorney?

A Yes, I explain to them the process that's going to take place.

Q And in your experience when you're talking to them, do they have questions?

A Some do. Some don't. Depending upon the individual.

Q And would you agree with me that your conversation with individuals is designed to have them ask questions?

A No.

Q So you believe that what you're saying is purely informational?

A That's my point. I'm relaying to them information of the process that's about to take place.

Q Do you recall how long that process went before Mr. Yocum asked to speak with you without an attorney?

A About 10 to 12 minutes of answering his questions.

MR. JARDINE: Thank you. No further questions.

THE COURT: Anything else?

3RD DIST. COURT - WEST JORDAN
SALT LAKE COUNTY, STATE OF UTAH

WEST JORDAN CITY vs. MILTON QUISPE

CASE NUMBER 031102772 Other Misdemeanor

---

CHARGES

Charge 1 - 76-7-104 - FORNICATION Class B Misdemeanor (amended) to Class B Misdemeanor
Offense Date: February 25, 2003
Plea: October 13, 2004 Guilty
Disposition: October 13, 2004 Guilty

CURRENT ASSIGNED JUDGE

L DOUGLAS HOGAN

PARTIES

Plaintiff - WEST JORDAN CITY
Defendant - MILTON QUISPE
Represented by: JOSEPH H JARDINE

DEFENDANT INFORMATION

Defendant Name: MILTON QUISPE
Date of Birth: August 10, 1984
Jail Booking Number:
Law Enforcement Agency: SL SHERIFF / UNIF PD
LEA Case Number: 03-1331
Prosecuting Agency: WEST JORDAN CITY
Agency Case Number: 031300300
Sheriff Office Number: 276568

ACCOUNT SUMMARY

| | | |
|---|---|---|
| TOTAL REVENUE | Amount Due: | 524.45 |
| | Amount Paid: | 524.45 |
| | Credit: | 0.00 |
| | Balance: | 0.00 |
| TRUST TOTALS | Trust Due: | 418.14 |
| | Amount Paid: | 418.14 |
| | Credit: | 0.00 |
| | Trust Balance Due: | 0.00 |
| | Balance Payable: | 0.00 |

---

12-08-03 Case filed

12-08-03 Filed: From an Information

12-08-03 Note: APPEAL FROM WEST JORDAN-ASSIGNED TO JUDGE CHRISTIANSEN

12-08-03 Filed: MOTION AND MEMORDANDUM IN SUPPORT OF CERTIFICATE OF PROBABLE CAUSE-JOSEPH JARDINE

12-08-03 Filed: AFFIDAVIT OF JOSEPH JARDINE

12-23-03 PRETRIAL CONFERENCE scheduled on February 02, 2004 at 08:30 AM with Judge CHRISTIANSEN.

12-23-03 Notice - NOTICE for Case 031102772 ID 5815729

PRETRIAL CONFERENCE is scheduled.

Date: 02/02/2004

Time: 08:30 a.m.

Location: SECOND FLOOR
THIRD DISTRICT COURT
3636 SOUTH 2700 WEST
WEST VALLEY, UT 84119

Before Judge: TERRY CHRISTIANSEN

12-23-03 Judge TERRY CHRISTIANSEN assigned.

01-15-04 Note: TLC/cce Judge Christiansen will be out of the office on date set for next hearing. Case reset, notices mailed to parties

01-15-04 PRETRIAL CONFERENCE rescheduled on February 23, 2004 at 01:30 PM Reason: Court Ordered.

02-23-04 JURY TRIAL scheduled on April 29, 2004 at 08:30 AM with Judge CHRISTIANSEN.

02-23-04 Minute Entry - Minutes for Pretrial Conference

Judge: TERRY CHRISTIANSEN

PRESENT

Clerk: cindye

Prosecutor: CARTER, RYAN B

Defendant

Defendant's Attorney(s): JARDINE, JOSEPH

Audio

Tape Number: 413 Tape Count: 142

HEARING

TAPE: 413 COUNT: 142

TAPE: 473   COUNT: 855
 On record
 Motion by city, response by def.  Motion TUA, court to issue
written decision
08-02-04 Filed: Memorandum Decision Denying Defendant's Motion for
         Summary Disposition Based Upon Lack of Jurisdiction
08-02-04 PRETRIAL CONFERENCE scheduled on August 09, 2004 at 08:30 AM
         with Judge CHRISTIANSEN.
08-02-04 Filed: Copy of Memorandum Decision mailed to all parties
08-09-04 Filed: Motion for continuance
08-09-04 Minute Entry - Minutes for Pretrial Conference
         Judge:   TERRY CHRISTIANSEN
         PRESENT
         Clerk:    cindye
         Defendant
         Defendant's Attorney(s): JARDINE, JOSEPH


         Audio
         Tape Number:    4101   Tape Count: 851


         HEARING


         TAPE: 4101   COUNT: 851
          On record
          No resolution at this time, case set for jury trial.  Ryan Carter
         indicated by phone that Oct date would be necessary.
         JURY TRIAL is scheduled.
             Date: 10/13/2005
             Time: 08:30 a.m.
             Location: SECOND FLOOR
                      THIRD DISTRICT COURT
                      3636 SOUTH 2700 WEST
                      WEST VALLEY, UT  84119
         Before Judge: TERRY CHRISTIANSEN
08-09-04 JURY TRIAL scheduled on October 13, 2005 at 08:30 AM with Judge
         CHRISTIANSEN.
10-06-04 JURY TRIAL rescheduled on October 13, 2004 at 08:30 AM
         Reason: Correct calendar.

The amount of Restitution
ORDER OF PROBATION
The defendant is placed on probation for 12 month(s).
Probation is to be supervised by Salt Lake County Probation Ser.
Defendant to serve 30 day(s) jail.

Defendant is to pay a fine of 500.00 which includes the surcharge.
Interest may increase the final amount due.
Pay fine on or before October 1, 2005.
Pay fine to The Court.

PROBATION CONDITIONS
No other violations.
Timely payments.
No contact whatsoever with victim.
Verification of participation in counseling.
Verification of completion of counseling.
Comply with Salt Lake County probation services
Defendant to have evaluation and comply with treatment through Salt Lake County Probation
Defendant to have no contact with individuals under 18 years of age during probation
Credit towards fine for Evaluation and treatment

10-13-04 Charge 1 amended
10-13-04 Charge 1 Disposition is Guilty
10-13-04 Trust Account created Total Due: 412.93
10-13-04 Fine Account created Total Due: 500.00
10-19-04 Trust Account created Total Due: 5.21
10-19-04 Fee Account created Total Due: 15.95
10-19-04 Note: Added to payment schedule 1060015836
12-15-04 Restitution Payment Received: 97.66
12-15-04 Interest on Rstitutn Payment Received: 2.34
12-22-04 Restitution Check # 27730 Trust Payout: 97.66
12-22-04 Interest on Rstitutn Check # 27730 Trust Payout: 2.34
12-22-04 Note: Mailed Restitution check to victim this date
01-25-05 Restitution Payment Received: 98.84
01-25-05 Interest on Rstitutn Payment Received: 1.16
02-01-05 Restitution Check # 27851 Trust Payout: 98.84

---

06-22-05 Note: MAILED RESTITUTION CHECK TO VICTIM THIS DATE
06-22-05 Warrant issued on: June 22, 2005 Warrant Num: 981149833 Bail Allowed
Bail amount: 3000.00
Judge: TERRY CHRISTIANSEN
Issue reason: Failure to Comply with Probation
06-30-05 REVIEW HEARING scheduled on June 30, 2005 at 08:31 AM in WJ Courtroom 36 with Judge ADKINS.
06-30-05 Warrant recalled on: June 30, 2005 Warrant num: 981149833
Recall reason: Warrant recalled because defendant appeared.
06-30-05 OSC/SLCPS scheduled on August 15, 2005 at 01:30 PM in WJ Courtroom 37 with Judge CHRISTIANSEN.
06-30-05 Minute Entry - Minutes for INCOURT NOTE
Judge: ROBERT ADKINS
PRESENT
Clerk: deniseo
Defendant

Audio
Tape Number: 05072 Tape Count: 9.11

Set for OSC hearing, SLCPS to prepare affidavit for hearing.
07-18-05 Fine Payment Received: 100.00
08-04-05 Filed: Stay report - Probation Services, update
08-08-05 Ruling Entry - STAY REPORT SLCPS
Judge: TERRY CHRISTIANSEN
Clerk: mindyg
Court reviewed. Deft has paid restitution in full and is working on the fine. Deft has a mental health eval scheduled for 8-16-05 which he thought he could do at the end of probation. Deft was corrected on his misjudgment. Would court consider striking the OSC. Court order approved.
08-08-05 OSC/SLCPS Cancelled.
Reason: Court Ordered
08-08-05 Filed: Received OSC from Probation Services
08-09-05 Fine Payment Received: 86.73
08-09-05 INTEREST Payment Received: 13.27
09-06-05 Note: Deft has not had any new violations tracking ended for

| | | | |
|---|---|---|---|
| 06-02-07 Judge MICHELE CHRISTIANSEN assigned. | | | |
| 04-30-08 Judge MARK KOURIS assigned. | | | |
| 05-19-08 Fee Account created | Total Due: | 4.50 | |
| 05-19-08 Fee Account created | Total Due: | 4.00 | |
| 05-19-08 CERTIFIED COPIES | Payment Received: | | 4.50 |
| 05-19-08 CERTIFICATION | Payment Received: | | 4.00 |
| 02-18-09 Note: RETENTION SCHEDULE MET. CASE FILE DESTROYED. | | | |
| 02-13-15 Judge L DOUGLAS HOGAN assigned. | | | |